## BARRETTO vs. SNOWDEN.

A note *reserving interest*, negotiated by a *broker* or *agent*, who obtains the money on the same *for the maker* from a third person, is *not usurious* in the hands of the holder, although the agent be the *payee* of the note and receives 12½ per cent. for the negotiation, no part of such sum being paid or agreed to be paid to the person advancing the money.

An *endorser* not shewn to have been made liable by notice of the dishonor of a note, and not called to prove the genuineness of the note, is a *competent witness*, in an action by the endorsee against the maker, to shew that the note is not usurious.

*It seems* that he would be a competent witness for such purpose, although he had been fixed by notice of the non-payment of the note.

THIS was an action of assumpsit by the endorsee against the maker of a promissory note for $1333,33; the signa-

tures of the maker and endorser were admitted. The defendant proved that he applied to *Samuel Corp*, the payee of the note, for the loan of a sum of money, who agreed to make the same; that he made and delivered to Corp three several notes of $1333,33 each, payable in 12 months with interest, and agreed to give him a *bonus* of $500 for the loan of the money; that he also procured a mortgage to be executed by his daughter to secure the payments of the notes, which at the request of Corp was made payable to one Goold Hoyt. After the papers were executed, Corp paid to an agent of the defendant $3500. The note in question was one of the three notes delivered to Corp.

The plaintiff offered Corp as a witness to prove that the transaction was *not usurious;* he was objected to as interested, but admitted by the circuit judge. He testified that he was employed by the defendant to procure a loan of $3000 upon the mortgage of a farm, to be executed by the defendant's daughter; that he made the attempt, but failed; that he then told the defendant that by an application to some of his friends, stating that the obtaining the loan would be of great benefit to him, as it would enable the defendant to retain his influence in a coal company, (to satisfy subscriptions for stock in which the money was wanted,) whereby he, the witness, might obtain the appointment of secretary, that he might induce them to advance the sum required or even a larger sum, provided the security proposed should be satisfactory. That he accordingly applied to the plaintiff Goold Hoyt and another person, who agreed to advance the sum of $4000 on each receiving the note of the defendant for $1333,33 and the mortgage of the defendant's daughter as security. That having effected the negotiation thus far, he informed the defendant, who made his three several notes for $1333,33, payable to the witness, and procured the mortgage to be executed by his daughter. That he, the witness, delivered to each of the said three persons one of the notes, and to Goold Hoyt, the mortgagee, and received the sum of $4000. On going to the defendant to pay him the amount, he expressed great gratification at his success, and offered him $500 for his services; he expressed his satisfaction with

the proposal and accordingly paid over to the defendant $3500. He further testified that *he* had not the means to advance any money, and acted merely as *agent* in the business; that the plaintiff received no part of the money received by him, and that it was not until after the money was obtained by him that the arrangement was made as to the payment of the $500. On his *cross-examination* he stated that the sum of $4000 was raised by obtaining his own notes endorsed by his three friends to be discounted at a bank, each endorsing to the amount of one third of that sum; the notes were discounted by the bank on the responsibility of the endorsers, have been renewed from time to time and are still running in discount. The arrangement as to the $500 was made about the time the notes were discounted; the witness thought he might not have delivered the defendant's note to the plaintiff until after the payment of the $3500, but was certain he had promised to deliver it, and did deliver it about the time.

The judge charged the jury that if they believed Corp, they ought to find for the plaintiff, as according to his testimony there was no usury in the transaction, and he was the mere agent or broker of the defendant, for the purpose of raising the money upon the securities furnished. The jury found for the plaintiff, and a motion was made to set aside the verdict.

*J. Smith*, for defendant. The note is void for usury. Corp was the *lender* of the money; the plaintiff and the others who enabled him by their endorsement to raise the funds to lend to the defendant, and by means thereof to obtain the *bonus* of $500, were *not* the lenders of the money; they advanced nothing, and received nothing: it is a mere device to evade the statute. Corp, stating that he acted only as a *broker*, does not make him such. If the plaintiff recovers, what application will be made of the money? To pay Corp's note at the bank. If not so applied, the plaintiff will be liable to him in an action for money had and received. This case is not like those of *Dagnall* v. *Wigley*, 11 *East*, 42, and *Coster* v. *Dillworth*, 8 *Cowen*, 299, where it was clearly shewn

UTICA,
July, 1830.

Barretto
v.
Snowden.

that the person negotiating the loan acted merely as *broker*, his name not being on the paper as a party.   At all events, as endorser he was not a competent witness.   15 *Johns. R.* 240.   16 *id.* 200.

*H. Maxwell*, for plaintiff.   Corp was a mere *agent* in this transaction.   He had no money to lend.   The funds were obtained from the bank upon the responsibility of the plaintiff and the other lenders of the money, and as security for the payment of the money thus advanced by them, they held the notes and the mortgage.   They received no part of the premium paid to Corp, and are *bona fide* holders of the securities.   What was paid to Corp was a gratuity, and formed no part of the original agreement for a loan.   On the securities given by the defendant, Corp engaged to obtain $4000, and did obtain it, and the defendant voluntarily gave him $500 for his services.   The fact of his name being on the paper does not change the character in which he acted, notwithstanding what is said in 11 *East*, 42.   The question is, whether he acted as broker or not; if he did, the notes are not usurious, as decided by that case and by the case in 8 *Cowen*, 299.   His being an endorser did not render him an incompetent witness.

*By the Court*, SAVAGE, Ch. J.   This case presents two questions: 1st. Was Corp a competent witness? 2d. Was the transaction usurious?

1st. The endorser is a competent witness, unless excluded on the ground of interest.   The interest to exclude a witness must be direct and certain; or, the verdict must be evidence for or against him.   It is stated to be the rule in England, that in an action by the endorsee against the drawee of a bill, a prior endorser is a competent witness for the plaintiff or defendant.   *Chitty on Bills*, 531, 2, *and cases there cited.* This was so decided by Lord Ellenborough, in *Stevens* v. *Lynch*, 2 *Campb.* 232.   It was contended that the endorser was interested to support the action—as, if the plaintiff succeeded, the bill would be extinguished; but if he failed, he might still sue the first endorser.   This was answered by saying that it did not appear that an action could be main-

tained against the endorser; there was no direct evidence of the dishonor of the bill, and the witness was offered to prove a promise. The witness was admitted, Lord Ellenborough saying that the endorser had not such a direct interest as to render him incompetent.

*Humphrey* v. *Moxom, Peake's N. P. 52*, was an action by the endorsee of a bill of exchange against the acceptor. The drawer was called as a witness; it appeared that notice had been given to him the day after the bill became due of its having been dishonored. Lord *Kenyon* was inclined to think the objection to his competency good, because, by proving the bill paid, he would eventually discharge himself; but doubting whether the notice was in season, the witness was received subject to the opinion of the court: but I do not find that any motion was made for a new trial.

In the case of *The Juniata Bank* v. *Brown, 5 Serg. & Rawle, 232*, the supreme court of Pennsylvania held an endorser admissible; but they put it on the ground that as endorser he was discharged.

*Rice* v. *Stearn, 3 Mass. R. 225*, was an action on an endorsed note. The endorser had ordered the note to be paid to the plaintiff *at his own risk*. *Parsons*, Ch. J. says : if, notwithstanding this stipulation, the endorser is answerable if the maker do not pay the note, then the witness (the endorser) is interested, and ought not to have been sworn. The court, however, held that he was not liable upon this special endorsement, and therefore a competent witness. The same point had been so decided by that court in *Barnes* v. *Ball*, 1 *Mass. R.* 73.

In our own reports, there is but little to be found on the point. In *Herrick* v. *Whitney*, 15 *Johns. R.* 240, the payee of a note payable to bearer was admitted as a witness for the plaintiff to prove the execution of the note, and testified that he had no interest, having transferred the note to one Cummings at his risk as to the solvency of the maker; but the court said, the witness was responsible upon an implied warranty that the note was not forged : he therefore had a direct interest in establishing the fact which he was called to prove;

for by obtaining a verdict for the plaintiff on the plea of non-assumpsit, he protected himself against his own warranty. The case of *Shaver* v. *Ehle*, 16 *Johns. R.* 201, is not distinguishable from the preceding case, and was decided on the same principle. *In Tuthill* v. *Davis*, 20 *Johns. R.* 285, the endorser was introduced by the defendant to prove usury, and the court say he was properly admitted. These cases do not touch the question of interest. Lord *Kenyon* and Lord *Ellenborough* both seem to admit that if the endorser had become legally fixed with the demand, he would be interested; and the supreme court of Pennsylvania and Massachusetts assume that fact, and say he is incompetent because liable to pay the note.

If we apply the rule that an interest to disqualify a witness must be direct and certain, then, according to the cases above referred to, to exclude an endorser it should be shewn that he had become liable by having received due notice of the dishonor of the note. No evidence of that kind was offered; and the note being admitted, the witness was not offered to prove the note, and thus discharge himself from his warranty of the genuineness of the note. There was not enough shewn, therefore, to exclude the witness. Perhaps it might be doubted whether the witness ought to be excluded, even if his liability as endorser had been shewn; for, by fixing the debt upon the defendant, he does not discharge himself; if he is liable, the plaintiff may prosecute him as well as the defendant, and prefer to take execution against him; or the maker may be insolvent; so that his interest would be contingent. It is useless, however, to speculate on that point; enough was not shewn in this case to establish the interest of the witness. He was therefore competent.

By the testimony of Corp, it appears that he was the mere *agent* or *broker* of the defendant; that he was not in fact a party to the loan; and that what is complained of as usury was a gratuity. There was no corrupt agreement between the plaintiff and the defendant. In the language of *Le Blanc*, justice, in *Dagnall* v. *Wigley*, 11 *East*, 45, if Corp had agreed to advance the money, that would have been a

different matter ; but here he advanced nothing, and the person who did advance the money received no more than legal interest. Corp swears that the notes on which the money was raised were discounted on the responsibility of the endorsers ; and that he acted throughout as the agent for the defendant.

On this statement of facts, the judge's charge was correct, when he said the verdict should be for the plaintiff if the jury believed the testimony of Corp. Upon his testimony, the case is substantially like that of *Coster* v. *Dilworth,* 8 *Cowen,* 300.

New trial denied.